## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD J. WHITMORE,

              Plaintiff,              Case Number: 06-10042

v.                                JUDGE PAUL D. BORMAN
                                UNITED STATES DISTRICT COURT

COUNTY OF OAKLAND, JOHN
CUMMINGS, STEVEN LAW, and CLAY
JANSSON,

              Defendants.

_____ /

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 14)

Now before the Court is Defendants' Motion for Summary Judgment. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. The Court DENIES Defendant's motion on Plaintiff's 42 U.S.C. § 1983 excessive force claim, but GRANTS the motion on Plaintiff's battery, false arrest and imprisonment, malicious prosecution, and abuse of process claims.

**I.    FACTS**

Plaintiff Richard Whitmore ("Plaintiff") is an individual and a Michigan resident. (Compl. ¶ 2). Defendant Oakland County is the governmental authority in the County of Oakland. (Compl. ¶ 3). Defendants John Cummings ("Deputy Cummings"), Steven Law ("Deputy Law"), and Clay Jannson ("Deputy Jannson") are employed by the Oakland County Sheriff's Department as a deputy sheriffs. (Compl. ¶¶ 4, 5, 6).

The instant controversy revolves around the incidents of January 12, 2004. At that time,

1

Plaintiff and his wife, Julie Krohta ("Krohta"), from whom he was separated, were involved in a divorce and custody case. (Pl.'s Resp. 1). Plaintiff had custody of his daughter, Claire, and son, John. On the above date, Plaintiff was recuperating from arm surgery. (Compl. ¶ 10). To get some relief from the pain, Plaintiff allegedly drank two glasses of wine and took two Excedrin PM pills. (*Id.*). When Plaintiff sent his children to bed, Claire called her mother and told her that they needed help "because [Plaintiff] was being mean and [] was talking weird."[1] (Pl. Resp. Ex. L, FIA Investigation Summary 8). At approximately 8.30 p.m., Krohta instructed her friend, Patricia Mero, to call 911 for assistance for the children residing at Plaintiff's house. (Defs.' Br. 1). As a result of the call to 911, Deputy Law arrived at Plaintiff's residence, entered Plaintiff's garage, which was open, and knocked on door leading to the interior of Plaintiff's house.[2] (Compl. ¶ 11). Plaintiff opened the door and then contends that Deputy Law grabbed him by the arm and "guided him" into the garage. (Pl.'s Resp. Ex. C., Pl.'s Dep. 28). Defendant claims that Plaintiff appeared intoxicated when he answered the door. (Defs.' Br. 1).

Deputy Law preformed a pat down search of Plaintiff and requested that Plaintiff follow a pen light with his eyes. (Pl.'s Resp. 4). Deputy Cummings soon arrived and was invited by Plaintiff to check on Plaintiff's children. (Pl.'s Resp. 4). The children appeared safe, and Deputy Cummings did not find any signs of distress. (Pl.'s Resp. 4). Once Deputy Cummings reported to Deputy Law and Plaintiff that Plaintiff's children were fine, Plaintiff requested to speak with his attorney. (*Id.* at 5). Plaintiff also requested that Deputies Law and Cummings

---

[1] Claire reported to the FIA worker that she call her mother because "dad was really dopey talking." (Pl. Resp. Ex. L, FIA Investigation Summary 8).

[2] Claire had opened the garage door at some point in the evening.

leave his home, but they refused to do so.  (*Id*.).  Plaintiff declined an offer by the deputies to

take a Breathalyzer test.  The deputies continued to question Plaintiff in his garage, with the

lights off.  (*Id*. at 5).  The deputies did not, at that time, inform Plaintiff that he was under arrest.

(*Id*.).

 Plaintiff claims that at this time, he had already been detained by the deputies for seven

minutes.  (*Id*.).  He then tried to go back into his house; but as he reached for the door, Deputy

Cummings grabbed his arm and Deputy Law tackled him.  (*Id*.).

 Defendants' claim that Plaintiff pushed Deputy Cummings out of the way, in an attempt

to get inside his house.  (Defs.' Br. 1).  Defendants aver that Deputy Law grabbed Plaintiff's

wrists and ordered him to put his hand behind his back.  (*Id*.). When Plaintiff refused to do so,

the deputies contend that they used two or three knee strikes to Plaintiff's outer thigh area, in

order to handcuff Plaintiff.  (*Id*.).   Plaintiff disputes that he made contact with Deputy

Cummings as he attempted to go back into the house.  (Pl.'s Resp. 6).  Plaintiff also alleges that

he was hit in the leg, hit in his injured wrist, and hit with an ASP baton.  (*Id*.)  Plaintiff believes

he was pushed against a bench area in his garage, while both deputies kneed him, and he was

"roughed up, pushed around and hit no less than 13 times on his left leg." (*Id*.).  Plaintiff also

alleges he was hit again while handcuffed, as he was placed into the squad car.  (Pl.'s Resp. 6).

Plaintiff avers that his handcuffs were put on too tight and were not loosened when he informed

the officers the handcuffs were too tight.

 Defendants' deny any use of the ASP baton, or any other use of force, except for the two

or three knee strikes used on Plaintiff in order to get him handcuffed.  (Def.'s. Br. 2).

 Plaintiff was arrested for resisting and obstructing a police officer, as well as child

neglect.  (Defs.' Br. 1).   Plaintiff claims he was handcuffed around 9 p.m. and placed in the back

of Deputy Law's squad car.  (Pl.'s Resp. 7).  Plaintiff asserts that he remained in the car for

almost an hour, with the interior light left on, allowing his neighbors to observe his detention.

(*Id*.).  Plaintiff also contends that he was removed from the squad car and struck with an ASP

baton ten more times.  (*Id*.).  Plaintiff requested that the deputies call his sister to oversee the

children, but the deputies disregarded his suggestion.  (Defs.' Br. 6).  Subsequently, Plaintiff was

driven to the county jail and booked.

Plaintiff filed a five-count Complaint on January 5, 2006.[3]  Defendants filed the instant

Motion for Summary Judgment on August 4, 2006.  Plaintiff filed his response on August 25,

2006.  Defendants filed their reply on September 25, 2006.   Defendants did not move for

summary judgment on Plaintiff's state law battery (Count II) or false arrest (Count III) claims.

Defendants argue that they did not violate a clearly established statutory or constitutional

right - unreasonable search and seizure - and are entitled to qualified immunity.  Defendants aver

that even if they violated Plaintiff's right to be free from unreasonable seizure, Defendants are

still entitled to qualified immunity because the deputies had no reason to know that their conduct

was clearly unlawful.  Defendants assert that they had probable cause to arrest Plaintiff and

therefore Plaintiffs false arrest and malicious prosecution claims cannot survive.  Defendants

---

[3]         Count I:        42 U.S.C. 1983 (Excessive Force, Municipal Liability, Illegal
                              Entry)
            Count II:       Battery
            Count III:      False Arrest and Imprisonment
            Count IV:      Malicious Prosecution
            Count V:       Abuse of Process

contend that Deputy Jansson is entitled to summary judgment on the malicious prosecution claim and the abuse of process claim because he did not make the decision to prosecute Plaintiff, and there is no evidence that Defendants took any action with malice.  Defendant Oakland County argues that Plaintiff fails to identify a custom, policy or procedure that violated Plaintiff's civil rights, and no custom, policy or procedure violated Plaintiff's civil rights.

Plaintiff responds that when viewing the facts and evidence in a light most favorable to the Plaintiff, Defendants' actions were not objectively reasonable.  Plaintiff argues that a reasonable officer would have known that his conduct violated clearly established constitutional rights, as the officers' use of force was not objectively reasonable.  Plaintiff contends that Defendants illegally entered Plaintiff's home, when they entered his garage without an invitation.   Plaintiff also argues that he possessed a fundamental, constitutionally protected liberty interest in the custody of his children.  Plaintiff claims that Defendants violated this interest when they reused to permit Plaintiff to direct where he children where placed.  Plaintiff asserts that the pretext of his arrest was the alleged assault on the deputies under Mich. Comp. Law section 750.81d(1).  However, Plaintiff contends that the charge was ultimately dismissed and a child neglect charge then became the justification for the arrest.  Plaintiff asserts that no probable cause was found for arresting Plaintiff under Mich. Comp. Law section 750.81d(1) at a preliminary hearing.  Plaintiff claims that, likewise, there was no probable cause to arrest Plaintiff on child neglect charges.  Plaintiff avers that there is a genuine issue of material fact on Plaintiff's malicious prosecution claim because false statements were made to prosecuting officials causing the issuance of a warrant.  Plaintiff argues that Oakland County's custom, policy or procedure of failing to train its officers in state mandated interviewing protocols lead to

5

Plaintiff being falsely reported to have abused his children.

Defendants reply that Deputy Law entered the garage with permission, as Plaintiff's daughter opened the door for him. Defendants contend that the audio tape of Deputy Law speaking with Plaintiff proves there was no physical confrontation at that point. Defendants believe that Plaintiff's condition - odor of alcohol on his breath, slurred speech, unsteady feet - combined with the 911 call, justified further investigation of the situation. Defendants aver that Plaintiff was drunk and cannot accurately remember the situation. Defendants question why a police officer would grab Plaintiff and tackle him without provocation. Defendants assert that they were justified in contacting Plaintiff's ex-wife to determine where the children should be placed. Defendants argue that the audio/video tape contradicts Plaintiff's assertion that he was taken out of the squad car and struck with an ASP multiple times. Defendant claims that there is no procedure requiring them to contact the FIA before contacting a parent to determine where the children should be placed, especially since the children are not the basis of this cause of action. Defendants argue that Plaintiff was not unlawfully detained, but lawfully charged with child neglect and resisting/obstructing a police officer.

Defendants also contend that: (1) the force used on Plaintiff was objectively reasonable under the circumstances; (2) they did not violate Plaintiff's fundamental parental rights by not listening to him in his intoxicated condition; (3) subsequent judicial determinations do not bear on the crucial question of probable cause; (4) probable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity; and (5) Oakland County did establish a child abuse and neglect protocol, which was followed by Defendants.

## II.    ANALYSIS

6

### A.      Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof."  FED. R.

CIV. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the non-moving

party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted).  A dispute

over a material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine

issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.

1993).  In making this evaluation, the court must examine the evidence and draw all reasonable

inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-

11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere

allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd.

of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the

non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Discussion**

**1.     Excessive Force under the Fourth Amendment**

Defendants argue that they are entitled to qualified immunity and therefore summary

judgment should be granted in their favor. Defendants contend that they were entitled to use

force to arrest plaintiff, given the fact that Plaintiff resisted arrest. Defendants assert that the

level of force used was objectively reasonable to subdue Plaintiff, so that an arrest could be

effectuated.

Plaintiff responds that Defendants' actions were not objectively reasonable. Plaintiff

argues that he alleged and submitted evidence of excessive force. Plaintiff contends that a

reasonable deputy would have known his conduct violated clearly established constitutional

rights.

8

The doctrine of qualified immunity affords "not a defense to liability," but, rather, "an immunity from suit altogether . . . to avoid [the] burdens of [the] costs of trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Qualified immunity shields those government officials performing discretionary functions from liability for civil damages, as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003). The determination of whether an officer is entitled to qualified immunity involves a three-step inquiry: (1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; (3) whether the plaintiff has offered sufficient evidence to indicate that the officer's action was objectively unreasonable in light of the clearly established constitutional rights. *Id*. at 848.

Proper application of the reasonableness test is based on the facts and circumstances of each particular case. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider when addressing reasonableness are: (1) the severity of the crime at issue; (2) the immediacy of the safety threat to officers or others; (3) whether the suspect actively resisted arrest. *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396.

Under the Fourth Amendment, the right to make an arrest allows the officer to use some

9

physical coercion to effect it.  *Id*.  "Not every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Untalan v.*

*City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005) (citing *Graham*, 490 U.S. at 396-97).

"Reasonableness in an excessive force case is an objective inquiry where the question is whether

the officer's actions are 'objectively reasonable' in light of the facts and circumstances of the

situation, without consideration of an officer's underlying intent or motivation."  *Graham*, 490

U.S. at 397.  "An officer's evil intentions will not make a Fourth Amendment violation out of an

objectively reasonable use of force; nor will an officer's good intentions make an objectively

unreasonable use of force constitutional."  *Id*.  "For a right to be clearly established, 'the

contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.'  'Although it need not be the case that the very action in

question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness

must be apparent.'"  *Feathers*, 319 F.3d at 848 (quoting *Anderson v. Creighton*, 483 U.S. 635,

639, 640 (1987)).

Viewing the facts in the Plaintiff's favor, there is a genuine issue of material fact whether

Plaintiff's Fourth Amendment rights were violated due to excessive force.  From the audio

recording of Deputies Law and Cummings cruiser videos, it is unclear whether Plaintiff's actions

warranted the amount of force exerted upon him.  As a result of Plaintiff's claim of excessive

force, and the lack of a video version of the arrest, a genuine issue of material fact exists whether

Deputy Law and Deputy Cummings' actions were objectively reasonable in the amount of force

used to place Plaintiff under arrest.

It is important to note that Defendants claim that Plaintiff was struck three times in the

10

thigh and pictures of Plaintiff's alleged  injuries from the arrest show multiple bruises on the leg and arms.  (Pl.'s Resp. H, Pictures).

Therefore, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim.

### 2.      Unlawful Entry

Defendants argue that Deputy Law entered Plaintiff's garage with permission. Defendants contend that Claire opened the garage door prior to Defendants' arrival.  Defendants assert that Deputy Law was told to enter the garage and knock on the side door of the home.

Plaintiff responds that Defendants illegally entered Plaintiff's home by entering his garage.  Plaintiff argues that a garage is part of the curtilage and an unauthorized entry is a violation of the Fourth Amendment. Plaintiff contends that entry of the garage without a warrant is a clear constitutional violation and thus negates qualified immunity.

Plaintiff does not cite case law which holds that when a child opens the garage door for the police, the police still may not enter without a warrant.  However, even assuming that Defendants did violate Plaintiff's constitutional rights by entering the garage, Plaintiff does not provide evidence that a reasonable officer, when called to the scene of an alleged child neglect incident, would know that they were violating a clearly established constitutional right, by entering a garage that was opened by one of the children being neglected, for the purpose of allowing the officer to enter.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim of illegal entry.

### 3.      Fundamental Right as a Parent

Plaintiff argues in his response that he possessed a fundamental, constitutionally

protected liberty interest in the custody of his children, which he claims was violated when Defendants Law and Cummings rejected his request that his sister be called to supervise his children. The Court finds that the issue need not be addressed because Plaintiff did not include this claim in the Complaint.

### 4.   Failure to Train (Oakland County)

A municipality, like a supervisor, may not be held liable under § 1983 upon the theory of *respondeat superior. Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978). A municipality may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. For municipal liability, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

"[Section] 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (1997). A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury. *Monell*, 436 U.S. at 690-91. One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Thus, to establish a basis for inadequate training, a plaintiff must demonstrate that the police department pursued an official custom or policy of failing to adequately train deputies, and that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom. *See Haverstick v. Financial*

12

*Fed. Credit, Inc.*, 32 F.3d 989, 996 n.8 (6th Cir. 1994) (citing *City of Canton*, 489 U.S. at 387-88).

In the instant case, Plaintiff's Complaint states that "Defendant County of Oakland is also liable because of its Sheriff's Department's policies, practices, and customs, which lead to this Complaint of violations of Plaintiff's civil rights." (Compl. ¶ 37). Defendants argue that there is no evidence that a policy of procedure was the moving force of the alleged violation. Defendants contend that Plaintiff has failed to identify such a policy and cannot connect a policy to the injury. Plaintiff responds that if proper interviewing techniques were used, there would not have been a report of abuse. Defendants reply that Oakland County implemented a standard child abuse and neglect protocol. Defendants assert that there is no requirement that state protocol must be used. Defendants alternatively insist that Oakland County's protocol is in line with the state protocol and the Defendants followed the protocol.

The Court finds that Plaintiff has not shown any evidence Deputies Law, Cummings, or Jansson's training was deficient; nor did Plaintiff demonstrate that Oakland County pursued a custom or policy of failing to adequately train its deputies in investigating child neglect. Even assuming that Plaintiff did demonstrate Oakland County's failure to train, Plaintiff has provided no evidence of deliberate indifference.

"[D]eliberate indifference is a stringent standard of fault, requiring proof that the municipal actor disregarded a known or obvious consequence of his action. . . . [A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler*, 126 F.3d at 856-66.

13

No evidence was presented to the Court showing that Oakland County was aware of other incidents the Sheriff's Department investigation of child neglect.  Even if such evidence was provided, "deliberate indifference does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious, deliberate indifference to the alleged violation." *Thomas*, 398 F.3d at 433.

In the instant case, Plaintiff does not claim that deputies mishandled other child neglect investigations, nor does he claim that Oakland County was aware of a problem with its protocol, or that Defendants training on child neglect investigations was inadequate in any way. Therefore, the Court should find that Oakland County did not have a custom or policy of failure to train.

Accordingly, the Court grants Defendants' Motion for Summary Judgment on the issue of municipal liability under § 1983.

### 5.    False Arrest Claim

Plaintiff alleges that the individual Defendants violated his Fourth Amendment rights by arresting and prosecuting him without probable cause.

"Section 1983 claims predicated on false arrest, false imprisonment, or malicious prosecution fail if probable cause for an arrest is established." *Hansel v. Bisard*, 30 F.Supp.2d 981, 985 (E.D. Mich. 1998).   "The Supreme Court has held that the test for whether an arrest is constitutionally valid is 'whether, at the moment the arrest was made, the officers had probable cause to make it-- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United*

14

*States v. Dotson*, 49 F.3d 227, 229 (6th Cir. 1995) (citation omitted).

### a.      Child Neglect

Plaintiff was arrested for violating Mich. Comp. Law section 750.81d(1) and for child neglect.

The Court concludes that there was probable cause to support the arrest of Plaintiff and the removal of Plaintiff's children, based on child neglect.  Plaintiff had slowed speech, slurred words, and became easily agitated, which is evidenced throughout the cruiser videos.  The deputies could smell alcohol on his breath.  The children informed the deputies that their father had been drinking, acting strangely, and that they were scared of him.  Additionally, the children could not care for their own health and welfare, as Claire, the oldest, was only seven years old and John was five years old.  (Pl.'s Resp. 2).   From this evidence, it was reasonable for the deputies to assume that Plaintiff was intoxicated and subsequently unable to take care of his children that evening.  Accordingly, the Court grants Defendants summary judgment on the issue of probable cause for child neglect.

### b.      Resisting and Obstructing an Officer

Mich. Comp. Law § 750.81d(1) provides:

> an individual who assaults, batters, wounds, *resists, obstructs*, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

M.C.L. § 750.81d(1) (emphasis added).  Defendants assert that Plaintiff violated this statute when he resisted arrest; Plaintiff refused to put his hands behind his back, and pulled away from the deputies.  Plaintiff contests this assertion and contends that Deputy Cummings grabbed his wrist when he reached for the door to his home.

15

"Probable cause is [only] an issue of fact for the jury to resolve if there are any genuine issues of material fact[s] relevant to the inquiry." *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).

There is audio evidence from the cruiser videos indicating that Plaintiff was resisting arrest. Defendants can be hear repeatedly to "stop resisting." Even taking the facts in a light most favorable to Plaintiff, there is no question of fact as to whether Plaintiff resisted an officer. Accordingly, the Court grants Defendants summary judgment on the issue of probable cause for an arrest under Mich Comp. Law section 750.81d(1).

Alternatively, even if the Court found that Defendants did not have probable cause to arrest Plaintiff for resisting and obstructing, they had probable case, as mentioned above, to arrest Plaintiff for child neglect.

### 6.    Section 1983 Malicious Prosecution Claim

In the past, a malicious prosecution claim was actionable under § 1983 when all of the state law elements were present, and if probable cause was lacking. This is no longer the case as § 1983 malicious prosecution does not rely on state laws within the circuit. *See Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987), overruled, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001). Under *Albright v. Oliver*, 510 U.S. 266 (1994), a § 1983 claim for malicious prosecution based on the Fourth Amendment is now recognized. The Sixth Circuit "recognized a federal claim of malicious prosecution under the Fourth Amendment where plaintiffs alleged that defendants wrongfully investigated, prosecuted, convicted, and incarcerated them." *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1005-07 (6th Cir. 1999)). At a minimum, a plaintiff must show the lack of probable cause

16

supporting his arrest and prosecution. *Id*. at 259.

In the instant case, assuming that Plaintiff was originally arrested for child neglect, and viewing the facts in a light most favorable to Plaintiff, Plaintiff cannot show the lack of probable cause supporting his arrest and detention.  As stated above, there is no genuine issue of material fact as to whether Defendants had probable cause to arrest Plaintiff for resisting and obstructing an officer.  Further, due to Plaintiff's condition, and the ages of his children, even in a light most favorable to Plaintiff, Defendant had probable cause to arrest him for child neglect. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's Malicious Prosecution claim regarding Mich. Comp. Law section 750.81d(1), and Defendants' motion as to Plaintiff's Malicious Prosecution claim regarding child neglect.

### 7.      State Law Claims for Malicious Prosecution and Abuse of Process

The elements of a malicious prosecution claim are: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 378 (1998).

Plaintiff only alleges Malicious Prosecution as to the assault child neglect charge. Plaintiff asserts in his response that the resisting and obstructing charge "was a bogus charge that ultimately was dismissed at preliminary hearing," (Pl.'s Resp. 17), but makes no mention as to the result of the child neglect proceeding.  However, Defendant does not dispute that the first two prongs have been met.

17

Assuming that both charges were terminated, the Defendants argue that a claim of malicious cannot be brought against a police officer.  The Michigan Supreme Court has stated that public prosecutors possess the "independent authority to initiate criminal prosecutions." *Matthews*, 572 N.W.2d at 613.  "Thus, . . . the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution."  *Id*.  However, "case law confirms that a prosecutor's charging decision does not automatically insulate a police officer from liability for false statements in an incident report relied upon by the prosecutor."  *Strutz v. Oakland County*, 308 F. Supp. 2d 767, 787 (E.D. Mich. 2004).

In this case, Defendants prepared an incident report on the night of the arrest.  While Defendants assert that Plaintiff was prosecuted by the Oakland County Prosecutor and that they did not make the decision to prosecute, they do not dispute that the prosecutor read the report or relied upon the report in deciding to charge Plaintiff with the resisting and obstructing a police officer, and child neglect.  Plaintiff alleges in his Complaint that Deputies Law and Cummings caused a criminal proceeding – the resisting and obstruction charge – to be instituted against him, and that they caused the proceeding to be continued with malice or with a purpose other than to bring Plaintiff to justice.   Plaintiff also alleges that Deputy Jansson instituted a child neglect charge against him and that Deputy Jansson caused the proceeding to be continued with malice.

Plaintiff's response can be construed as arguing "malice" when Defendants allegedly made false statements or willfully concealed facts when Deputies Law and Cummings filed a false report against him regarding assault, resisting and obstruction charge.  Likewise, Plaintiff's

18

response can be construed as alleging that the malice on the part of Deputy Jansson when he relied on Deputies Law and Cummings' false statement, and also had an ulterior motive because he knew Plaintiff's ex-wife.

Regarding the resisting and obstructing claim, Plaintiff's argument appears to hinge on the fact that he did not assault Deputy Cummings.  Deputy Cummings claims that Plaintiff pushed him out of the way.  However, it appears Plaintiff was never charged with assault, only resisting and obstructing an officer, though it is unclear whether Plaintiff was originally arrested for assault.  (Defs.' Br. Ex. A., Incident Report).  Factual disputes regarding the truthfulness of the deputies' accounts must be resolved by the trier of fact.  *See Strutz*, 308 F. Supp. 2d at 787 n.7.   As stated above, Defendants had probable cause to arrest Plaintiff on a resisting arrest charge.  Additionally, even if there was not probable cause for Plaintiff's arrest for assault, Plaintiff has not shown evidence of malice.

Regarding the child neglect charge, while Plaintiff does dispute he was intoxicated, Defendants contend otherwise in their depositions and the incident report, and the cruiser audio/video contradicts Plaintiff's assertion.  Therefore, there is no evidence, other than Plaintiff's testimony that he was not drunk, proffered of malice or a purpose on the part of the deputies, other than to bring Plaintiff to justice.  Thus, the elements of Malicious Prosecution are not met.

Accordingly, the Court grants Defendants' motion as to Plaintiff's state law Malicious Prosecution claim.

To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution

of the proceeding.  *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981).  "The gravamen of the misconduct for which the liability stated in this section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  (*Id*.)

Defendants argue that there is no evidence that any of the Defendants took any action with malice or that the subsequent issuing of process was outside the intended purpose. Defendant contends that Deputy Jansson was just an investigator for the Sheriff's Department, he did not institute or continue the child neglect proceeding.  Plaintiff does not respond. Plaintiff's Complaint, however, alleges that the criminal and child neglect charges were used to cause "vexation, trouble, embarrassment, damage to Plaintiff's reputation, and damage to Plaintiff's community reputation and relationship with his children.  (Compl. ¶ 58).  Further, Plaintiff's Complaint alleges that Defendants abused the process because the criminal and child neglect charges were improper and Defendants knew, or should have known, that the allegations were false. (Compl. ¶ 59).

The Court finds that there is no evidence to support Plaintiff's claim that the Defendants used the charges to cause Plaintiff embarrassment or to damage his reputation.  Accordingly, the Court grants Defendants summary judgment on Plaintiff's abuse of process claim.

## III.   CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.  The Court:

DENIES Defendant's Motion for Summary Judgment on Plaintiff's excessive force

claim; and

GRANTS Defendant's Motion for Summary Judgment on the remainder of Plaintiff's

counts.

**SO ORDERED.**


s/Paul D. Borman                              
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 24, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
January 24, 2007.


s/Denise Goodine                                  
Case Manager